## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | Chapter 15 |
| BENCH ACCOUNTING, INC., *et al,*[1] | Case No. 25-10463 (   ) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF

KSV Restructuring Inc., in its capacity as the appointed Licensed Insolvency Trustee and authorized foreign representative ("**KSV**" or the "**Trustee**") of the estates of Bench Accounting, Inc. ("**Bench**") and 10Sheet Services Inc. ("**10Sheet**" and, together with Bench, the "**Debtors**"), in the Debtors' proceedings (the "**Canadian Proceeding**") pending before the Supreme Court of British Columbia at Vancouver (the "**B.C. Court**") under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "**BIA**"), has commenced the above-captioned chapter 15 cases (the "**Chapter 15 Cases**") ancillary to the Canadian Proceeding.

In connection therewith, the Trustee hereby files this *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (this "**Verified Petition**") on behalf of the Debtors, pursuant to sections 1504 and 1515 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), seeking the entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code, (ii) applying section

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, for each Debtor follow in parentheses: Bench Accounting, Inc. (3574) and 10Sheet Services Inc. (3476). The Trustee's head office is located at 220 Bay Street, Suite 1300, PO Box 20, Toronto, Ontario, M5J 2W4, Canada.

365(e) of the Bankruptcy Code in the Chapter 15 Cases pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code, and (iii) giving full force and effect in the United States to (a) the certificates of appointment (the "**Appointment Certificates**") issued by the Office of the Superintendent of Bankruptcy (Canada) (the "**OSB**"), appointing the Trustee as the Licensed Insolvency Trustee for each of the Debtors, and (b) the order of the B.C. Court, dated March 13, 2025 (including any extensions or amendments thereof authorized by the B.C. Court, the "**Ancillary Order**"), (i) declaring that the Debtors' center of main interest is Vancouver, British Columbia, (ii) requesting the aid and recognition of this Court (defined below) in carrying out the terms of the Ancillary Order, including granting the Trustee representative status in the Chapter 15 Cases, (iii) authorizing and empowering the Trustee to act as the Debtors' foreign representative to apply to this Court for recognition of the Ancillary Order and for assistance in carrying out the terms of the Ancillary Order, and (iv) approving the sale of substantially all of the Debtors' assets to Recruiter.com Ventures Inc. ("**Recruiter**").[2]

Contemporaneously with the filing of this Verified Petition, the Trustee has filed (i) the chapter 15 petitions of the Debtors (collectively, with the Verified Petition, the "**Chapter 15 Petitions**") and (ii) the *Motion for Provisional Relief in Aid of Canadian Proceeding* (the "**Provisional Relief Motion**") seeking entry of an order (a) staying execution against the Debtors' assets in the United States pursuant to section 1519(a)(1) of the Bankruptcy Code and (b) applying sections 362 and 365(e) of the Bankruptcy Code in the Chapter 15 Cases on a provisional basis pursuant to sections 105(a), 1519(a)(3), and 1521(a)(7) of the Bankruptcy Code.  In support

---

[2]    The Trustee seeks approval of the sale to Recruiter through the *Trustee's Motion, Pursuant to Sections 105(a), 363, 1501, and 1521 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014, for Entry of an Order (I) Recognizing and Enforcing the Approval and Vesting Order; (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Any and All Liens, Claims, Encumbrances, and Other Interests; and (III) Granting Related Relief*, filed contemporaneously herewith.

thereof, the Trustee filed the *Declaration of Robert Kofman in Support of the Debtors' Chapter 15 Petitions and First Day Pleadings in Foreign Proceedings* (the "**Kofman Declaration**") and the *Declaration of Matthew B. Lunn in Support of Verified Petition for Recognition of Foreign Proceeding and Related Relief and Motion for Provisional Relief in Aid of Canadian Proceeding*, which are incorporated herein by reference.

In further support of this Verified Petition, the Trustee respectfully states as follows:

## <u>JURISDICTION AND VENUE</u>

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution. These Chapter 15 Cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the Chapter 15 Petitions for recognition of the Canadian Proceeding under section 1515 of the Bankruptcy Code.

2. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Trustee consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

32937432.6

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1410 because the Debtors have assets in the United States, including located in Delaware, and such venue in this District will be consistent with the interests of justice and convenience for the Debtors, having regard to the relief sought by the Trustee.

4.      The statutory predicates for the relief requested herein are sections 105(a), 365(e), 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## BACKGROUND

**A.      General Background Regarding the Canadian Proceeding**

5.      On January 7, 2025 (the "**Canadian Filing Date**"), the Debtors each filed assignments in bankruptcy pursuant to section 49 of the BIA, and the Trustee was appointed by the OSB as the Licensed Insolvency Trustee for each of the Debtors.  The Trustee's appointment was affirmed at the first meeting of creditors, held separately for each of the Debtors, on January 27, 2025.

6.      On February 6, 2025, the Trustee opened bankruptcy files at the B.C. Court registry for each of the Debtors.

7.      On March 5, 2025, the Trustee filed an application with the B.C. Court seeking to consolidate the respective bankruptcy proceedings of the Debtors within Action Number B-250050 under a single style of cause.  The B.C. Court entered an order approving the application on March 7, 2025.

**B.      The Debtors' Formation and Prior Business Operations**

8.      Debtor 10Sheet was incorporated on October 15, 2010, under the *Canada Business Corporations Act*, and is a wholly-owned subsidiary of Debtor Bench.  Bench is a

Delaware company that was incorporated on March 8, 2012, and is privately-held by approximately 135 common shareholders and various preferred shareholders.

9.      Prior to the Canadian Filing Date, the Debtors operated a combined business under the "Bench" name that provided accounting, bookkeeping, tax, and other financial services to over 10,000 customers across North America, primarily consisting of small business owners. The Debtors offered their customers easy-to-use financial software, paired with in-house bookkeepers, to streamline small business bookkeeping year-round. This consisted of one-on-one expert support, including a dedicated bookkeeping team available via desktop or mobile, monthly financial statements and expense overviews to help businesses monitor their money, real-time updates on financial data to help businesses stay on budget, and support with tax preparations and filings.

10.     The Debtors' headquarters, and only office, was in Vancouver, British Columbia. Substantially all of the Debtors' customers contracted with Bench, and substantially all of the Debtors' 413 employees were employed by 10Sheet. Those employees performed substantially all administrative and daily operations for the Debtors, including accounting, financial reporting, budgeting, treasury and operational oversight, managing vendor relationships, and managing the Debtors' cash management system. Without liquidity to fund business operations, the Debtors ceased operations and terminated all employees on December 27, 2024.

## C.    The Debtors' Capital Structure

11.     As of the Canadian Filing Date, the Debtors had approximately US$5.1 million in assets and approximately US$51.5 million in liabilities.

12.     Of that amount, approximately US$34.6 million (excluding interest and fees) is owed to National Bank of Canada ("**NBC**")—the Debtors' operating lender and largest

32937432.6

secured creditor.  NBC provided funding to Bench, which funding was guaranteed by 10Sheet, pursuant to a credit agreement dated June 7, 2024, as amended by a first amending agreement dated October 1, 2024, and a forbearance, funding, and second amending agreement dated December 12, 2024 (collectively, the "**NBC Credit Agreement**").  Pursuant to the NBC Credit Agreement, NBC provided the Debtors with (i) a term facility in the aggregate principal amount of US$15 million, (ii) a revolving loan facility up to an aggregate principal amount of US$20 million, and (iii) a hedging facility up to an aggregate principal amount of CAD$5.5 million.[3]  John Borch, a representative of NBC, was the sole inspector (the "**Inspector**") appointed in the Canadian Proceeding.

13.    The Debtors' other secured creditors include: (i) iNovia Capital Inc. ("**iNovia**"),[4] as collateral agent in respect of subordinated secured convertible promissory notes issued by the Debtors on September 28, 2023, with an outstanding balance of approximately US$5.6 million as of the Canadian Filing Date; (ii) various creditors with claims related to computers used by employees, IT peripherals, and security equipment, including Apple Canada Inc., Hewlett-Packard Financial Services Canada Company, Vault Creditor Corporation, and Wells Fargo Equipment Finance Company; and (iii) Bank of Montreal ("**BMO**"), the Debtors' former lender, who is owed minimal overdraft fees related to bank accounts.

14.    The Debtors' unsecured debt totals approximately US$19 million, excluding off-balance sheet obligations, and primarily consists of: (i) unsecured convertible notes issued to various parties; (ii) outstanding professional fees owed in connection with audit and tax

---

[3]    Fasken Martineau DuMoulin LLP, the Trustee's Canadian counsel, has provided the Trustee with an opinion confirming that, subject to the standard assumptions and qualifications contained therein, NBC's security is valid and enforceable as against a trustee in bankruptcy.

[4]    iNovia is also an investor in Bench.

services and outsourced client tax preparation and bookkeeping; (iii) lease obligations; (iv) payroll processing fees; (v) employee benefits; and (vi) software fees.  Bench's off-balance sheet obligations, include, but are not limited to, terminated contracts and amounts owing to customers who prepaid for services (estimated to total approximately US$5.6 million).  10Sheet's off-balance sheet obligations include, but are not limited to, amounts that may be owing to employees for unpaid severance and termination pay, if any.

**D.     The Events Leading to the Canadian Proceeding and the Debtors' Sale Process**

15.     Following the launch of their products in 2013, the Debtors successfully secured multiple rounds of venture funding, totaling over US$100 million by 2021, and expanded their services.  By the summer of 2024, the Debtors found themselves in need of additional liquidity.  On June 7, 2024, the Debtors entered into the NBC Credit Agreement with NBC, pursuant to which NBC provided approximately US$34.6 million in loans (excluding interest and fees) as of the Canadian Filing Date, including approximately US$24 million to pay off amounts owed to BMO and additional funding thereafter.

16.     In late November 2024, the Debtors informed NBC that they were projected to run out of cash by mid-December 2024.  As a result, NBC engaged KSV as NBC's financial advisor pursuant to an engagement letter dated November 28, 2024.  KSV's mandate included, among other things, reviewing the Debtors' weekly cash flow projection for the period ending March 1, 2025.

17.     KSV's review confirmed that the Debtors were projected to run out of liquidity by the end of December 2024, and that additional funding of approximately US$7.7 million would be needed to sustain the Debtors' operations through March 1, 2025.  NBC advised the Debtors that it was not prepared to provide the Debtors with additional liquidity given the

historical performance of the business, the substantial increase in NBC's exposure following entry into the NBC Credit Agreement six months earlier, and the Debtors' projected ongoing cash burn rate.

18.     Following NBC's decision, beginning in early December 2024, the Debtors and iNovia, with the consent of NBC, and oversight by KSV, commenced an expedited sale process (the "**Sale Process**"), recognizing that it was imperative to complete a going-concern sale as quickly as possible to preserve value for creditors, given the Debtors' status as a service business with intangible assets consisting of their customer base, their technology platform, and employees. The bid deadline was established as December 20, 2024 (the "**Bid Deadline**"), and the parties' endeavored to close on a transaction shortly thereafter.

19.     In furtherance of the Sale Process, the Debtors prepared a virtual data room (the "**VDR**") and a non-disclosure agreement that interested parties were required to sign to obtain access to the VDR.  The VDR also included a template asset purchase agreement and transition services agreement (the "**TSA**").  The TSA was designed to facilitate an expedited closing of a transaction, and provided a mechanism for a buyer to continue to perform due diligence following closing.  In this regard, if a buyer had not determined as of the closing date which contracts to assume or employees to hire, the Debtors would retain, post-closing, at the buyer's cost, all contracts and employees until the buyer could determine which ones it wanted to retain.  Each participant in the Sale Process was advised of the expedited timelines, including the Bid Deadline. The Debtors engaged with approximately ten potential bidders during the Sale Process, but ultimately only received one unacceptable offer by the Bid Deadline.

20.     With no liquidity to operate, and no acceptable offers to acquire the Debtors' business, on December 27, 2024, the Debtors terminated all of their employees and

announced that they intended to cease operations immediately. Following that announcement, approximately twelve parties contacted the Debtors' representatives and expressed interest in acquiring some or all of the Debtors' business, and the Debtors' representatives continued to reach out to other potential interest parties, including Recruiter.

21.     The Debtors' representatives engaged with multiple interested parties and, on December 29, 2024, sent a letter to those parties stating that offers must: (i) be submitted immediately; (ii) be in the form of a binding letter of intent, setting out the purchase price, principal deal terms, and preferred transaction structure; and (iii) confirm that the buyer would pay a material, non-refundable deposit which would be fully earned upon being selected as the successful bidder.

22.     As a result of this process, Recruiter emerged as the lead bidder, and from December 29, 2024, to January 1, 2025, extensive negotiations took place between Recruiter and the Debtors, in consultation with KSV, as advisor to NBC. These negotiations resulted in the execution of a binding letter of intent on January 1, 2025 (the "**LOI**"), which required Recruiter to pay a CAD $1 million deposit, of which CAD $800,000 was to be paid by January 3, 2025, with the balance to paid on January 14, 2025. The LOI contemplated a closing date of February 28, 2025. The LOI also allowed Recruiter to continue the Debtors' business operations and hire key employees to facilitate continuity of service and prevent customer attrition.

23.     On January 17, 2025, the Trustee and Recruiter entered into a transition services agreement that will remain in effect until the sale closes.

24.     On February 25, 2025, Recruiter and the Trustee executed an asset purchase agreement (the "**APA**"), which is unconditional except for (i) approval of the APA by the B.C. Court through the Ancillary Order, which was entered on March 13, 2025, and (ii) entry of an

order by this Court recognizing the Ancillary Order (the "**Recognition Order**") in these Chapter 15 Cases.

25.    The APA provides for Recruiter to acquire substantially all of the Debtors' personal tangible and intangible assets, free and clear of all encumbrances, in exchange for a purchase price of CAD$13 million, plus the assumption of certain liabilities and payment of cure costs, as set forth more fully in the APA.  The outside date for completion of the transaction under the APA is April 15, 2025, or such later date as may be agreed to by the parties (the "**Outside Date**"), and closing is required to occur on the fifth business day following entry of the Recognition Order, or such date as may be agreed to by the parties.  If the transaction does not close by the Outside Date, Recruiter is required to discontinue the business.

26.    NBC—the Debtors' only financial stakeholder with an economic interest in the transaction—supports approval of the APA.  The Inspector, an NBC representative, voted in favor of resolutions at inspectors' meetings held in each bankruptcy proceeding to approve the APA and the transaction and to authorize the Trustee to seek approval for the transaction from the B.C. Court and this Court.

27.    Accordingly, to meet the conditions precedent to closing on the APA, and maximize the value of the Debtors' assets for the benefit of creditors, the Trustee seeks recognition of the Canadian Proceeding as a foreign main proceeding and submits that such relief is appropriate for the reasons set forth below and in the memorandum of law in support of this Verified Petition (the "**Memorandum of Law**"), filed contemporaneously herewith.

**RELIEF REQUESTED**

28.    By this Verified Petition, the Trustee seeks the following relief:

32937432.6

i.  recognition, pursuant to section 1517 of the Bankruptcy Code, of the Canadian Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code;

ii.  application of section 365(e) of the Bankruptcy Code pursuant to section 1521 of the Bankruptcy Code as additional relief;

iii.  enforcement of the Ancillary Order in the United States pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; and

iv.  such other and further relief as is appropriate under the circumstances, pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

## <u>BASIS FOR RELIEF REQUESTED</u>

### A.    Recognition of Canadian Proceeding

29.    For the reasons more fully discussed in the Memorandum of Law filed contemporaneously herewith, the Canadian Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code because:

i.  the Canadian Proceeding is (i) a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code and (ii) a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because the Canadian Proceeding is pending in a jurisdiction where each of the Debtors maintains its center of main interests;

ii.  the Trustee is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

iii.  the Chapter 15 Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code; and

iv.  the Chapter 15 Petitions meet the requirements of sections 1504 and 1515 of the Bankruptcy Code.

30.    Moreover, recognizing the Canadian Proceeding would not be manifestly contrary to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code.  In fact, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code

32937432.6

and further cooperation between courts to the maximum extent possible as mandated by section 1525(a) of the Bankruptcy Code. Thus, the circumstances satisfy the conditions for mandatory recognition of the Canadian Proceeding under section 1517 of the Bankruptcy Code.

**B.      Final Application of Section 365(e) and Enforcement of the Certificate of Bankruptcy and the Ancillary Order**

31.      In connection with the recognition of the Canadian Proceeding as a "foreign main proceeding," the Trustee seeks entry of an order (i) applying section 365(e) of the Bankruptcy Code in these Chapter 15 Cases on a final basis[5] pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code and (ii) enforcing the Ancillary Order in the United States.

32.      Section 1507 of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507. Similarly, section 1521(a) of the Bankruptcy Code provides that, upon recognition of a foreign proceeding, and "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of any creditors, the court may grant any appropriate relief[.]" 11 U.S.C. § 1521. Such relief includes, among other things, "extending [provisional] relief granted under section 1519(a)" and "granting any additional relief that may be available to a trustee," with certain exceptions that are not relevant in the instant case. *Id*. Finally, section 105(a) of the Bankruptcy Code allows the Court to "issue any order ... necessary or appropriate to carry out the provisions of [title 11]."

33.      Section 365(e) of the Bankruptcy Code are critical protections that shield a debtor from creditor collection efforts and the termination of its contractual relationships, thereby

---

[5]      By the Provisional Relief Motion, the Trustee seeks the application of these provisions in these Chapter 15 Cases on a provisional basis until the disposition of this Verified Petition.

12

preventing the piecemeal depletion of the debtor's assets and business.  These provisions apply as of right in plenary bankruptcy cases, and their application is warranted and necessary in these Chapter 15 Cases.  Without a stay of proceedings and preservation of contractual relationships afforded by the Bankruptcy Code, the Debtors are vulnerable to creditor and supplier litigation or other collection efforts that would impair the Debtors' ability to sell their business and erode their going concern value.  Such actions could have a snowball effect and would reduce the chances of a successful outcome for the Canadian Proceeding.

34.    Similarly, section 69 of the BIA provides for a stay of the commencement or continuation of proceedings against the Debtors, any property of the Debtors, or the Trustee.  Such relief is necessary and appropriate to effectuate the sale of the assets of the Debtors contemplated by the Canadian Proceeding and is consistent with relief available in plenary bankruptcy proceedings.  Further, by the Ancillary Order, the B.C. Court expressly authorized the Trustee to seek such relief in this Court as necessary to give effect to the Ancillary Order in the United States.  The Trustee believes that enforcement of the Ancillary Order in connection with the recognition of the Canadian Proceeding is necessary to give effect to such order in the United States.

35.    Accordingly, this Court should apply section 365(e) of the Bankruptcy Code in these Chapter 15 Cases, and give full force and effect in the United States to the Appointment Certificates and the Ancillary Order under well-established principles of international comity and pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

**NOTICE**

36.    Pursuant to section 1517(c) of the Bankruptcy Code, a petition for recognition shall be decided at the "earliest possible time."  Accordingly, the Trustee requests that

the Court schedule a hearing on this Verified Petition for April 9, 2025, or as soon thereafter as possible.  In addition, the Trustee requests that the Court approve the manner of service set forth in the *Motion for Order Specifying Form and Manner of Service of Notice*, filed contemporaneously herewith.

WHEREFORE, the Trustee respectfully requests that the Court grant this Verified Petition and enter the Proposed Order recognizing the Canadian Proceeding as a "foreign main proceeding," applying section 365(e) of the Bankruptcy Code in these Chapter 15 Cases, enforcing the Ancillary Order in the United States, and granting such other relief as is appropriate under the circumstances.

Dated: March 13, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Elizabeth S. Justison*

Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Elizabeth S. Justison (No. 5911)
Daniel Trager (No. 7465)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253
Emails: mnestor@ycst.com
        mlunn@ycst.com
        ejustison@ycst.com
        dtrager@ycst.com

*Attorneys for KSV Restructuring Inc., as Trustee and Foreign Representative of the Debtors*

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, Robert Kofman declares as follows:

I am a Managing Director and duly authorized agent of KSV Restructuring Inc., which was appointed as the Licensed Insolvency Trustee and authorized to act as the foreign representative of Bench Accounting, Inc. and 10Sheet Services Inc.  I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "**Verified Petition**").  I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 13, 2025

*/s/ Robert Kofman*
Robert Kofman
Managing Director
KSV Restructuring Inc.

32937432.6

**EXHIBIT A**

**Recognition Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| BENCH ACCOUNTING, INC., *et al.*,[1] | Case No.  25-10463 (   ) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |
| | Ref. Docket No.____ |

## ORDER GRANTING RECOGNITION AND RELATED RELIEF

Upon the *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "**Verified Petition**")[2] filed by KSV Restructuring Inc., in its capacity as the appointed Licensed Insolvency Trustee and authorized foreign representative (the "**Trustee**") of the Debtors in their proceedings (the "**Canadian Proceeding**") pending before the Supreme Court of British Columbia at Vancouver (the "**B.C. Court**") under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended, for entry of an order (this "**Order**"), (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code, (ii) applying section 365(e) of the Bankruptcy Code in the Chapter 15 Cases pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code, and (iii) giving full force and effect in the United States to the Appointment Certificates and the Ancillary Order; and this Court having considered and reviewed the Chapter 15 Petitions and all pleadings and exhibits submitted by the Trustee in support thereof; and a hearing on the Chapter 15 Petitions having been held by this Court on _____, 2025; after due deliberation and sufficient cause appearing therefore, this Court finds and concludes as follows:

---

[1]    The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses:  Bench Accounting, Inc. (3574) and 10Sheet Services Inc. (3476).  The Trustee's head office is located at 220 Bay Street, Suite 1300, PO Box 20, Toronto, Ontario, M5J 2W4, Canada.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the Amended Standing Order.

B.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and this Court may enter a final order consistent with Article III of the United States Constitution.

C.     Venue is proper in this District pursuant to 28 U.S.C. § 1410.

D.     The Trustee is a "person" within the meaning of section 101(41) of the Bankruptcy Code and is the duly appointed "foreign representative" of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

E.     The Chapter 15 Cases were properly commenced pursuant to section 1504 and 1509 of the Bankruptcy, and the Chapter 15 Petitions meet the requirements of sections 1504 and 1515 of the Bankruptcy Code.

F.     The Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

G.     Canada is the center of main interests of each of the Debtors and, accordingly, the Canadian Proceeding is a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code and is entitled to recognition by this Court as a "foreign main proceeding" pursuant to section 1517(b)(1) of the Bankruptcy Code.

H.     The Trustee is entitled to all the relief provided pursuant to section 1520 of the Bankruptcy Code, including, without limitation, application of the automatic stay pursuant to section 362 of the Bankruptcy Code and application of section 365(e) of the Bankruptcy Code.

I.     Appropriate notice of the filing of, and the hearing on, the Verified Petition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

J.     The Trustee is further entitled to all relief expressly set forth in section 1521(a)-(b) of the Bankruptcy Code.

2

K.      The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted under sections 105(a), 362, 365, 1504, 1507, 1509, 1517, 1520, 1521, and 1525 of the Bankruptcy Code, and will not cause hardship to creditors of the Debtors or other parties in interests that is not outweighed by the benefits of granting that relief.

L.      The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest.

M.      Absent the requested relief, the efforts of the Debtors, the B.C. Court and the Trustee in conducting the Canadian Proceeding may be thwarted by the actions of certain creditors, a result that will obstruct the purposes of chapter 15 as reflected in section 1501(a) of the Bankruptcy Code.

N.      Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the Canadian Proceeding, and (iii) confers material benefits on, and is in the best interests of, the Debtors and their creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS**:

1.      The Verified Petition is granted as to each of the Debtors and the relief requested therein is GRANTED as set forth herein.

2.      The Canadian Proceeding is hereby recognized as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

3.      The Trustee is recognized as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Canadian Proceeding.

4.      The Debtors and the Trustee are granted all relief set forth in section 1520 of the Bankruptcy Code.

5.       The Appointment Certificates and the Ancillary Order (and any amendments or extensions thereof as may be granted from time to time by the B.C. Court) are hereby given full force and effect in the United States pursuant to sections 1507 and 1521 of the Bankruptcy Code.

6.       All other prior relief granted in this Court's *Order Granting Provisional Relief in Aid of the Canadian Proceeding* [Docket No. [●]], pursuant to section 1519(a) of the Bankruptcy Code, is hereby extended on a final basis pursuant to section 1521(a)(6) of the Bankruptcy Code.

7.       Pursuant to 1521(a)(7) of the Bankruptcy Code, section 365(e) of the Bankruptcy Code is hereby made applicable in these Chapter 15 Cases to the Debtors and their property within the territorial jurisdiction of the United States, effective as of the date of filing of the Chapter 15 Cases.  No person or entity may terminate or modify any contract or unexpired lease of Debtors based on a provision in such contract or lease that is conditioned on the insolvency or financial condition of any Debtor or the commencement of the Debtors' Chapter 15 Cases.

8.       The Canadian Proceeding shall be and hereby is granted comity and given full force and effect in the United States.

9.       The Trustee, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or the Local Rules.

10.       This Court shall retain jurisdiction with respect to: (i) the enforcement, amendment or modification of this Order; (ii) any requests for additional relief or any adversary proceeding brought in or through these Chapter 15 Cases; and (iii) any request by an entity for relief from the provisions of this Order, for cause shown, as to any of the foregoing, and provided the same is properly commenced and within the jurisdiction of this Court.

11.       The Chapter 15 Petitions and supporting papers shall be available upon request at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 to the attention of Beth Olivere, paralegal (bolivere@ycst.com).

12.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, but not limited to, Bankruptcy Rules 7062 and 1018, (i) this Order shall be effective and enforceable immediately upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a); (ii) the Trustee is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Trustee is authorized and empowered, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

13.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief, any adversary proceeding brought in and through these Chapter 15 Cases, and any request by an entity from the provisions of this Order that is properly commenced and within the jurisdiction of this Court.