**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re:* | Chapter 15 |
| BENCH ACCOUNTING, INC., *et al*,[1] | Case No. 25-10463 (   ) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

**DECLARATION OF ROBERT KOFMAN**
**IN SUPPORT OF THE DEBTORS' CHAPTER 15 PETITIONS**
**AND FIRST DAY PLEADINGS IN FOREIGN PROCEEDINGS**

I, Robert Kofman, declare as follows:

1.      I am the President and duly authorized agent of KSV Restructuring Inc. ("**KSV**" or the "**Trustee**").  I have personal knowledge of the matters set forth herein.  KSV is the Licensed Insolvency Trustee and authorized foreign representative   of the estates of Bench Accounting, Inc. ("**Bench**") and 10Sheet Services Inc. ("**10Sheet**" and, together with Bench, the "**Debtors**"), in the Debtors' proceedings (the "**Canadian Proceeding**") pending before the Supreme Court of British Columbia at Vancouver (the "**B.C. Court**") under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "**BIA**").

2.      The Debtors have commenced the above-captioned chapter 15 cases (the "**Chapter 15 Cases**") ancillary to the Canadian Proceeding, through the filing of a chapter 15 petition for each Debtor and the *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "**Verified Petition**" and, collectively with the chapter 15 petitions, the

---

[1]     The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, for each Debtor follow in parentheses:  Bench Accounting, Inc. (3574) and 10Sheet Services Inc. (3476).  The Trustee's head office is located at 220 Bay Street, Suite 1300, PO Box 20, Toronto, Ontario, M5J 2W4, Canada.

"**Chapter 15 Petitions**"),[2] pursuant to sections 1504 and 1515 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").

3.      To the best of my knowledge, information, and belief, the Canadian Proceeding is a collective judicial proceeding in Canada under Canadian law relating to insolvency or the adjustment of debt in which the assets and affairs of the Debtors are subject to the control and supervision of the B.C. Court.  Accordingly, I believe that the Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) the Bankruptcy Code.

4.      I respectfully submit this declaration (this "**Declaration**") in support of the (i) Chapter 15 Petitions, (ii) the *Motion Pursuant to Fed. R. Bankr. P. 1015(b) for Order Directing Joint Administration of Cases Under Chapter 15 of Bankruptcy Code* (the "**Joint Administration Motion**"), (iii) the *Motion for Provisional Relief in Aid of the Canadian Proceeding* (the "**Motion for Provisional Relief**"), (iv) the *Motion for Order Specifying Form and Manner of Service of Notice* (the "**Form and Manner Motion**") and (v) the *Motion for Order Authorizing the Filing of a Consolidated List of Foreign Proceeding Administrators, Litigation Parties, and Entities Against Whom 11 U.S.C. § 1519 Provisional Relief is Sought* (the "**Consolidated List Motion**").  In further support of this Declaration, I refer the Court to the statements contained in the *First Report of KSV Restructuring Inc. as Licensed Insolvency Trustee of the Debtors,* dated March 5, 2025 (the "**Report**"), which are respectfully incorporated herein by reference.[3]

---

[2]    Capitalized terms used, but not defined herein, have the meaning given to them in the Verified Petition.

[3]    A copy of the Report is attached as Exhibit A to the *Declaration of Matthew B. Lunn in Support of Verified Petition for Recognition of Foreign Proceeding and Related Relief and Motion for Provisional Relief in Aid of the Canadian Proceeding*, filed contemporaneously herewith.

## BACKGROUND

**A.      General Background Regarding these Chapter 15 Cases**

5.      On January 7, 2025 (the "**Canadian Filing Date**"), the Debtors each filed assignments in bankruptcy pursuant to section 49 of the BIA, and the Trustee was appointed by the Office of the Superintendent of Bankruptcy (Canada) (the "**OSB**") as the Licensed Insolvency Trustee for each of the Debtors.  The Trustee's appointment was affirmed at the first meeting of creditors, held separately for each of the Debtors, on January 27, 2025.

6.      On February 6, 2025, the Trustee opened bankruptcy files at the B.C. Court registry for each of the Debtors.

7.      On March 5, 2025, the Trustee filed an application with the B.C. Court seeking to consolidate the respective bankruptcy proceedings of the Debtors within Action Number B-250050 under a single style of cause.  The B.C. Court entered an order approving the application on March 7, 2025.

8.      On the date hereof, the Trustee commenced these Chapter 15 Cases by filing, among other things, the Chapter 15 Petitions, seeking recognition by this Court of the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

**B.      The Debtors' Formation and Prior Business Operations**

9.      Debtor 10Sheet was incorporated on October 15, 2010, under the *Canada Business Corporations Act*, and is a wholly-owned subsidiary of Debtor Bench.  Bench is a Delaware company that was incorporated on March 8, 2012, and is privately-held by approximately 135 common shareholders and various preferred shareholders.

10.      Prior to the Canadian Filing Date, the Debtors operated a combined business under the "Bench" name that provided accounting, bookkeeping, tax, and other financial services

3

to over 10,000 customers across North America, primarily consisting of small business owners. The Debtors offered their customers easy-to-use financial software, paired with in-house bookkeepers, to streamline small business bookkeeping year-round. This consisted of one-on-one expert support, including a dedicated bookkeeping team available via desktop or mobile, monthly financial statements and expense overviews to help businesses monitor their money, real-time updates on financial data to help businesses stay on budget, and support with tax preparations and filings.

11.    The Debtors' headquarters, and only office, was in Vancouver, British Columbia. Substantially all of the Debtors' customers contracted with Bench, and substantially all of the Debtors' 413 employees were employed by 10Sheet. Those employees performed substantially all administrative and daily operations for the Debtors, including accounting, financial reporting, budgeting, treasury and operational oversight, managing vendor relationships, and managing the Debtors' cash management system. Without liquidity to fund business operations, the Debtors ceased operations and terminated all employees on December 27, 2024.

## C.    The Debtors' Capital Structure

12.    As of the Canadian Filing Date, the Debtors had approximately US$5.1 million in assets and approximately US$51.5 million in liabilities.

13.    Of that amount, approximately US$34.6 million (excluding interest and fees) is owed to National Bank of Canada—the Debtors' operating lender and largest secured creditor. NBC provided funding to Bench, which funding was guaranteed by 10Sheet, pursuant to a credit agreement dated June 7, 2024, as amended by a first amending agreement dated October 1, 2024, and a forbearance, funding, and second amending agreement dated December 12, 2024 (collectively, the "**NBC Credit Agreement**"). Pursuant to the NBC Credit Agreement, NBC

provided the Debtors with (i) a term facility in the aggregate principal amount of US$15 million, (ii) a revolving loan facility up to an aggregate principal amount of US$20 million, and (iii) a hedging facility up to an aggregate principal amount of CAD$5.5 million.[4]   John Borch, a representative of NBC, was the sole inspector (the "**Inspector**") appointed in the Canadian Proceeding.

14.    The Debtors' other secured creditors include: (i) iNovia Capital Inc. ("**iNovia**"),[5] as collateral agent in respect of subordinated secured convertible promissory notes issued by the Debtors on September 28, 2023, with an outstanding balance of approximately US$5.6 million as of the Canadian Filing Date; (ii) various creditors with claims related to computers used by employees, IT peripherals, and security equipment, including Apple Canada Inc., Hewlett-Packard Financial Services Canada Company, Vault Creditor Corporation, and Wells Fargo Equipment Finance Company; and (iii) Bank of Montreal ("**BMO**"), the Debtors' former lender, who is owed minimal overdraft fees related to bank accounts.

15.    The Debtors' unsecured debt totals approximately US$19 million, excluding off-balance sheet obligations, and primarily consists of: (i) unsecured convertible notes issued to various parties; (ii) outstanding professional fees owed in connection with audit and tax services and outsourced client tax preparation and bookkeeping; (iii) lease obligations; (iv) payroll processing fees; (v) employee benefits; and (vi) software fees.   Bench's off-balance sheet obligations include, but are not limited to, terminated contracts and amounts owing to customers who prepaid for services (estimated to total approximately US$5.6 million).  10Sheet's off-balance

---

[4]    Fasken Martineau DuMoulin LLP, the Trustee's Canadian counsel, has provided the Trustee with an opinion confirming that, subject to the standard assumptions and qualifications contained therein, NBC's security is valid and enforceable as against a trustee in bankruptcy.

[5]    iNovia is also an investor in Bench.

sheet obligations include, but are not limited to, amounts that may be owing to employees for unpaid severance and termination pay, if any.

**D.     The Events Leading to the Canadian Proceeding and the Debtors' Sale Process**

16.     Following the launch of their products in 2013, the Debtors successfully secured multiple rounds of venture funding, totaling over US$100 million by 2021, and expanded their services.  By the summer of 2024, the Debtors found themselves in need of additional liquidity.  On June 7, 2024, the Debtors entered into the NBC Credit Agreement with NBC, pursuant to which NBC provided approximately US$34.6 million in loans (excluding interest and fees) as of the Canadian Filing Date, including approximately US$24 million to pay off amounts owed to BMO and additional funding thereafter.

17.     In late November 2024, the Debtors informed NBC that they were projected to run out of cash by mid-December 2024.  As a result, NBC engaged KSV as NBC's financial advisor pursuant to an engagement letter dated November 28, 2024.  KSV's mandate included, among other things, reviewing the Debtors' weekly cash flow projection for the period ending March 1, 2025.

18.     KSV's review confirmed that the Debtors were projected to run out of liquidity by the end of December 2024, and that additional funding of approximately US$7.7 million would be needed to sustain the Debtors' operations through March 1, 2025.  NBC advised the Debtors that it was not prepared to provide the Debtors with additional liquidity given the historical performance of the business, the substantial increase in NBC's exposure following entry into the NBC Credit Agreement six months earlier, and the Debtors' projected ongoing cash burn rate.

6

19.     Following NBC's decision, beginning in early December 2024, the Debtors and iNovia, with the consent of NBC, and oversight by KSV, commenced an expedited sale process (the "**Sale Process**"), recognizing that it was imperative to complete a going-concern sale as quickly as possible to preserve value for creditors, given the Debtors' status as a service business with intangible assets consisting of their customer base, their technology platform, and employees. The bid deadline was established as December 20, 2024 (the "**Bid Deadline**"), and the parties' endeavored to close on a transaction shortly thereafter.

20.     In furtherance of the Sale Process, the Debtors prepared a virtual data room (the "**VDR**") and a non-disclosure agreement that interested parties were required to sign to obtain access to the VDR. The VDR also included a template asset purchase agreement and transition services agreement (the "**TSA**"). The TSA was designed to facilitate an expedited closing of a transaction, and provided a mechanism for a buyer to continue to perform due diligence following closing. In this regard, if a buyer had not determined as of the closing date which contracts to assume or employees to hire, the Debtors would retain, post-closing, at the buyer's cost, all contracts and employees until the buyer could determine which ones it wanted to retain. Each participant in the Sale Process was advised of the expedited timelines, including the Bid Deadline. The Debtors engaged with approximately ten potential bidders during the Sale Process, but ultimately only received one unacceptable offer by the Bid Deadline.

21.     With no liquidity to operate, and no acceptable offers to acquire the Debtors' business, on December 27, 2024, the Debtors terminated all of their employees and announced that they intended to cease operations immediately. Following that announcement, approximately twelve parties contacted the Debtors' representatives and expressed interest in

acquiring some or all of the Debtors' business, and the Debtors' representatives continued to reach out to other potential interest parties, including Recruiter.com Ventures Inc. ("**Recruiter**").

22.     The Debtors' representatives engaged with multiple interested parties and, on December 29, 2024, sent a letter to those parties stating that offers must: (i) be submitted immediately; (ii) be in the form of a binding letter of intent, setting out the purchase price, principal deal terms, and preferred transaction structure; and (iii) confirm that the buyer would pay a material, non-refundable deposit which would be fully earned upon being selected as the successful bidder.

23.     As a result of this process, Recruiter emerged as the lead bidder, and from December 29, 2024, to January 1, 2025, extensive negotiations took place between Recruiter and the Debtors, in consultation with KSV, as advisor to NBC.  These negotiations resulted in the execution of a binding letter of intent on January 1, 2025 (the "**LOI**"), which required Recruiter to pay a CAD$1 million deposit, of which CAD$800,000 was to be paid by January 3, 2025, with the balance to paid on January 14, 2025. The LOI contemplated a closing date of February 28, 2025.  The LOI also allowed Recruiter to continue the Debtors' business operations and hire key employees to facilitate continuity of service and prevent customer attrition.

24.     On January 17, 2025, the Trustee and Recruiter entered into a transition services agreement that will remain in effect until the sale closes.

25.     On February 25, 2025, Recruiter and the Trustee executed an asset purchase agreement (the "**APA**"), which is unconditional except for (i) approval of the APA by the B.C. Court through an approval and vesting order (the "**AVO**"), which AVO was entered by the B.C. Court on March 13, 2025, and (ii) entry of an order by this Court recognizing the AVO (the "**Recognition Order**") in these Chapter 15 Cases.

26.     The APA provides for Recruiter to acquire substantially all of the Debtors' personal tangible and intangible assets, free and clear of all encumbrances, in exchange for a purchase price of CAD$13 million, plus the assumption of certain liabilities and payment of cure costs, as set forth more fully in the APA.  The outside date for completion of the transaction under the APA is April 15, 2025, or such later date as may be agreed to by the parties (the "**Outside Date**"), and closing is required to occur on the fifth business day following entry of the Recognition Order, or such date as may be agreed to by the parties.  If the transaction does not close by the Outside Date, Recruiter is required to discontinue the business.

27.     NBC—the Debtors' only financial stakeholder with an economic interest in the transaction—supports approval of the APA.  The Inspector, an NBC representative, voted in favor of resolutions at inspectors' meetings held in each bankruptcy proceeding to approve the APA and the transaction and to authorize the Trustee to seek approval for the transaction from the B.C. Court and this Court.

## CHAPTER 15 CASES RECOGNITION AND OTHER RELIEF REQUESTED

### A.     Recognition of the Canadian Proceeding as a Foreign Main Proceeding

28.     The Trustee has filed, concurrently herewith, the Verified Petition, seeking entry of an order (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code, (ii) applying section 365(e) of the Bankruptcy Code in the Chapter 15 Cases pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code, and (iii) giving full force and effect in the United States to (a) the certificates of appointment issued by the OSB, appointing the Trustee as the Licensed Insolvency Trustee for each of the Debtors, and (b) the order of the B.C. Court, dated March 13, 2025, (i) declaring that the Debtors' center of

main interest is Vancouver, British Columbia and (ii) authorizing the Trustee to act at the Debtors'
foreign representative.

29.     As set forth more fully in the Verified Petition, and accompanying
memorandum of law, the following non-exhaustive reasons inform my review that Vancouver is
the center of main interests for the Debtors:

a.     The Debtors were headquartered in Vancouver, with their only office
located at 545 Robson Street in Vancouver.

b.     The bankruptcy filings were made in Vancouver and the OSB accepted that
Vancouver is the appropriate jurisdiction for the filings, including for
convening the first meeting of creditors of each of the Debtors.

c.     As a result of the bankruptcies, all the property, assets and undertaking of
the Debtors vested in the Trustee.  From and after the Canadian Filing Date,
the Trustee is the sole representative of the Debtors.  KSV Restructuring
Inc., the Trustee, is a Canadian financial advisory practice that focuses on
restructuring and insolvency.

d.     Debtor 10Sheet is a Canadian corporation and employed nearly all of the
Debtors' employees.

e.     Substantially all administrative and daily operations for the Debtors,
including accounting, financial reporting, budgeting treasury and
operational oversight, were performed by Debtor 10Sheets' employees,
including the VP Finance and Business Operations and Chief People Officer
and the Head of Technology.

f.     The sole member of the Board of Directors as of the Canadian Filing Date
was Shawn Abbott, a founder of iNovia, a Canadian based venture capital
firm which invested in the Debtors;

g.     The Debtors' cash management system was managed by employees of
10Sheet.

h.     The Debtors' main bank accounts are located at Canadian banks.

i.     The Debtors' largest creditors are based in Canada, as follows:

i.     NBC is a Canadian bank, and the NBC Credit Agreement is
governed by the laws of British Columbia.  NBC is the only

10

creditor with an economic interest in the transaction and is supportive of these Chapter 15 Cases;

ii.      iNovia, a Canadian venture capital firm, serves as collateral agent, against each of the Debtors in respect of subordinated secured convertible promissory notes issued by the Debtors on September 28, 2023, with a balance outstanding of approximately US$5.6 million as of the Filing Date; and

iii.     the Debtors' largest unsecured creditor, Morguard, is the Debtors' Vancouver landlord and is based in Toronto, Ontario.

j.      The Debtors' vendor relationships were managed by 10Sheets' employees.

k.      The Debtors' external auditors are PricewaterhouseCoopers LLP in Canada.

l.      The audited financial statements of the Debtors are prepared in accordance with Canadian Generally Accepted Accounting Principles.

30.      Accordingly, I believe that this Court should recognize the Canadian Proceeding as a "foreign main proceeding", as defined in section 1502(4) of the Bankruptcy Code.

**B.     Motion for Provisional Relief**

31.      In addition to seeking recognition of the Canadian Proceeding as "foreign main proceeding," the Trustee also seeks certain provisional relief, including, without limitation, a temporary restraining order to obtain the benefits of a stay of proceedings, to enjoin collection efforts against the Debtors and their assets pending recognition of the Canadian Proceeding. This relief is necessary to avoid immediate and irreparable harm to the Debtors and their assets if U.S. creditors and contract parties begin a "race to the courthouse" or resort to other self-help remedies resulting in piece-meal and preferential liquidation and distribution of assets, rather than an orderly realization and distribution of value according to legal priorities. The failure to secure the Debtors' assets would irreparably harm the Debtors by jeopardizing the Debtors' efforts to complete the Sale Process and close the transaction on the required timeline, to the detriment of the Debtors' creditors.

32.     The proposed relief will allow for the orderly administration and wind-down of the Debtors' affairs and the equitable resolution of the Debtors' liabilities with supervision by the B.C. Court.  The application of section 362 of the Bankruptcy Code and the resulting stay of actions against the Debtors will not only preserve the Debtors' assets, but also allow the Trustee to devote its full attention to effectively and efficiently administering the Canadian Proceeding so that it can complete the Sale Process.

33.     I believe that the provisional relief requested is necessary and appropriate and is in the best interests of the Debtors, their creditors, and other parties in interest.

**C.     Motion for Joint Administration and Consolidated List Motion**

34.     Joint administration is warranted in these Chapter 15 Cases.  The Debtors are affiliated entities with closely related financial affairs and business operations, and joint administration will ease the administrative burden on the parties.  The Trustee anticipates that the various notices, applications, motions, other pleadings, hearings, and orders in these Chapter 15 Cases will affect each of the Debtors.  The failure to administer these Chapter 15 Cases jointly would result in duplicative pleadings and service.  Such unnecessary duplication would impose avoidable expenses on all parties.

35.     Joint administration will permit the Court to use a single docket for the jointly administered cases and to combine notices to creditors and other parties in interest of the Debtors' estates.  Joint administration will protect parties in interest by ensuring that such parties in interest will be appropriately apprised of all matters before the Court in each of the jointly administered Chapter 15 Cases.

36.     For the same reasons, and given that the Debtors share many of the same potential creditors and notice parties, the Debtors seek authority to file a consolidated list (the

"**Consolidated List**") of foreign proceeding administrators, parties to litigation pending in the United States in which any of the Debtors is a party, to the extent any such litigation exists,[6] and all persons and entities against which the Trustee seeks provisional relief pursuant to section 1519 of the Bankruptcy Code.

37.    I believe that authorizing the joint administration of the Debtors' Chapter 15 Cases, and authorizing the Debtors to file the Consolidated List, will promote efficiency and conserve the resources of all parties in interest, including the Court.

**D.    Form and Manner Motion**

38.    Contemporaneously with the filing of these Chapter 15 Cases, the Trustee filed the Form and Manner Motion requesting entry of an order (i) approving the notice of the Chapter 15 Petitions and the Debtors' proposed sale to Recruiter in the form annexed thereto as Exhibit 1 (the "**Notice**"), (ii) specifying the manner of service of the Notice, and (iii) scheduling a hearing to consider the Chapter 15 Petitions.

39.    The Debtors have a number of creditors, potential creditors, and other parties in interest, all of which need to be provided with notice of the Provisional Order (once entered), the proposed *Order Granting Recognition and Related Relief* (the "**Recognition Order**") attached as Exhibit A to the *Verified Petition for Recognition of Foreign Proceeding and Related Relief*, and the hearing to consider the Chapter 15 Petitions and any objections or responses thereto (the "**Recognition Hearing**").  Under the facts and circumstances of the Chapter 15 Cases, the Trustee submits that service of the Notice in the manner proposed in the Form and Manner Motion

---

[6]    The Trustee is not aware of any litigation pending against the Debtors in the United States.

will provide the various parties in interest in these Chapter 15 Cases due and sufficient notice and service of such matters and any associated objection deadline and hearing dates.

40.     As set forth above, the Trustee is working to close on the proposed sale to Recruiter and the proceeds from that transaction will not be sufficient to satisfy NBC's secured claims in full.  Instead, NBC will suffer a significant shortfall on its senior secured position and the Trustee anticipates that no other secured or unsecured creditor will realize a recovery from the Debtors.  Accordingly, the Trustee intends to provide notice of the Canadian Proceeding, these Chapter 15 Cases, and the relief requested from both the B.C. Court and this Court, including approval of the sale to Recruiter, in the most efficient and economical manner.  In furtherance thereof, the Trustee seeks to provide notice by electronic mail where available.  Electronic mail is the only way to provide notice to certain key parties, namely, customers of Bench who prepaid for services, because the Debtors historically communicated with these customers via electronic mail. Furthermore, the Notice provides multiple efficient ways for any party receiving such notice to obtain copies of pleadings filed in these Chapter 15 Cases, as it provides a telephone number, website address, and email address that can be used to obtain such documents.  At the same time, it does not burden the Trustee or the Debtors and their estates with the significant costs necessarily attendant to copying and mailing the various documents associated with the Notice to thousands of creditors and other parties in interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 13, 2025

/s/ Robert Kofman
Robert Kofman, on behalf of KSV Restructuring Inc., *in its capacity as the Trustee and duly authorized Foreign Representative of the Debtors*